UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO. 5:10-CR-139-BR

UNITED STATES OF AMERICA

v.

ANTONIO MARCIAL NAVARETTE

ORDER

This matter is before the court on defendant's motion for compassionate release. (DE # 111.)

In 2010, pursuant to a plea agreement, defendant pled guilty to conspiracy to distribute and possess with the intent to distribute more than 500 grams of methamphetamine ("meth") and use of interstate transportation facilities in the commission of murder-for-hire. The court sentenced him to 262 months imprisonment on the controlled substance offense to run concurrently with 120 months imprisonment on the murder-for-hire offense. He appealed, and the Fourth Circuit Court of Appeals affirmed. In 2016, defendant's sentence on the controlled substance offense was reduced to 210 months based on his guideline range being lowered by a retroactive sentencing guideline amendment.

In February 2021, defendant filed the instant motion *pro se*. Pursuant to Standing Order No. 19-SO-3 (E.D.N.C. Jan. 25, 2019), the court appointed counsel to represent him for purposes of such a motion. (DE # 112.) Appointed counsel filed a memorandum in support of defendant's motion with supporting exhibits. (DE ## 115, 117.) The government filed a response in opposition, (DE # 120), and, in response to the court's order, filed defendant's

sentence computation and inmate discipline data, (DE # 119). Defendant filed a reply. (DE # 121.)

Defendant seeks a reduction in his sentence to time served or to serve the remainder of his custodial sentence on home confinement pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), as amended by the First Step Act of 2018 ("First Step Act").[1] That statute provides in relevant part:

> The court may not modify a term of imprisonment once it has been imposed except that—
> (1) in any case—
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . , after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
> (i) extraordinary and compelling reasons warrant such a reduction . . .
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c).

The Sentencing Commission has not issued a policy statement applicable to motions filed by defendants under this statute.[2] United States v. McCoy, 981 F.3d 271, 275 (4th Cir. 2020). "[A]s a result, district courts are 'empowered . . . to consider *any* extraordinary and compelling

---
[1] The First Step Act amended § 3582(c)(1)(A) to permit a defendant to bring such a motion. See Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239 (2018).
[2] The policy statement contained in U.S.S.G. § 1B1.13 "addresses only BOP-filed motions." United States v. High, 997 F.3d 181, 186 (2021). Nonetheless, it "'remains helpful guidance even when motions are filed by defendants.'" Id. (quoting McCoy, 981 F.3d at 282 n.7). Relevant here, "[w]ith respect to medical conditions, [extraordinary and compelling] reasons include that 'the defendant is suffering from a terminal illness' or 'the defendant is . . . suffering from a serious physical or medical condition.'" Id. (quoting U.S.S.G. § 1B1.13 cmt. 1(A)(i), (ii)) (alterations omitted).

2

reason for release that a defendant might raise.'" Id. at 284 (citation omitted) (emphasis added).

In deciding whether a sentence reduction is appropriate, the court must also consider the applicable § 3553(a) factors. 18 U.S.C. § 3582(c)(1)(A).

> Those factors include "the nature and circumstances of the offense"; "the history and characteristics of the defendant"; "the need to avoid unwarranted sentence disparities"; and the need for the sentence to "provide just punishment," "afford adequate deterrence," "protect the public," and "provide the defendant with . . . training, medical care, or other correctional treatment in the most effective manner."

United States v. High, 997 F.3d 181, 186 (4th Cir. 2021) (citing 18 U.S.C. § 3553(a)).

Here, the government acknowledges that defendant submitted a request for compassionate release to the BOP, (see Resp., DE # 120, at 3), and does not dispute that defendant has satisfied § 3582(c)(1)(A)'s threshold requirement. See United States v. Muhammad, 16 F.4th 126, 131 (4th Cir. 2021) ("[T]he threshold requirement in § 3582(c)(1)(A) is non-jurisdictional and satisfied if a defendant requests the [BOP] to bring a motion on their behalf and either fully exhausts all administrative rights to appeal the Bureau's decision *or* waits 30 days from the date of their initial request to file a motion in the district court."). Therefore, the court will consider the merits of defendant's motion.

Defendant requests that the court reduce his sentence based on his medical conditions combined with the spread of COVID-19 in the prison system. (Mem., DE # 118, at 5-16; Reply, DE # 121, at 4-7.) He argues that the § 3553(a) factors favor a sentence reduction. (Mem., DE # 118, at 17-22; Reply, DE # 121, at 7-9.) In response, the government claims defendant's medical conditions are not sufficient to justify any reduction, (see Resp., DE # 120, at 18-20),

3

particularly "because Defendant is in the process of being vaccinated" against COVID-19,[3] (id. at 19). Moreover, it contends, defendant's criminal history, the nature and circumstances of the instant offenses, and the efforts BOP is undertaking to protect inmates from COVID-19 weigh against defendant's release. (Id. at 20-22.)

"COVID-19 raises medical issues in the prison context that are particularly serious — it is highly communicable; it is aggravated by certain other medical conditions; and it can be lethal." High, 997 F.3d at 185. "[I]n considering whether extraordinary and compelling reasons for a sentence reduction exist in light of COVID-19, [district courts] have considered the age of the prisoner, the severity and documented history of the defendant's health conditions, and the proliferation and status of infections in the prison facility." United States v. Kibble, Criminal Action No. 2:19-00077, 2020 WL 3470508, at *2 (S.D.W. Va. June 25, 2020) (citing United States v. Brady, No. S2 18 Cr. 316 (PAC), 2020 WL 2512100, at *3 (S.D.N.Y. May 15, 2020) (collecting cases)), aff'd, 992 F.3d 326 (4th Cir.), cert. denied, 142 S. Ct. 383 (2021). The Centers for Disease Control and Prevention's ("CDC") list of risk factors for COVID-19 complications also informs the court's evaluation. Everett v. United States, No. 4:16cr35, 2020 WL 5793428, at *3 (E.D. Va. Sept. 25, 2020).

Defendant is 38 years old. He has a BMI of 27, (Mem., DE # 118, at 13), making him overweight, see CDC, About Adult BMI, https://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/index.html (last visited Feb. 1, 2022). He has gastroesophageal reflux ("GERD"), for which he takes the medicine famotidine

---

[3] At the time of briefing, defendant had received the first of two doses of a COVID-19 vaccine. (See Resp., Ex. 1, DE # 120-1.) The government represents that, according to the BOP, defendant would soon be fully vaccinated. (Id., DE # 120, at 19.)

4

and which has caused him some difficulty in breathing. (See Mem., Ex. B, DE # 115, at 3-5.) Some of his blood pressure level measurements fall within the category of hypertension. (See id. at 2, 9; id., Mem., DE # 118, at 15 (citing link to webmd.com).)

According to the CDC, being overweight can make defendant more likely to get severely ill from COVID-19, although not as likely as being obese or severely obese. See CDC, People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Feb. 1, 2022). The CDC does not identify GERD as a COVID-19 risk factor, cf. id., while some studies have concluded otherwise, see, e.g., Jiandong Zhou et al., *Proton Pump Inhibitor or Famotidine Use and Severe COVID-19 Disease: A Propensity Score-Matched Territory-Wide Study*, 70 Gut 2012, 2013 (Oct. 2021) ("Our data indicate that the use of [proton pump inhibitors] or famotidine is associated with a higher risk of severe COVID-19 disease after propensity score matching in a Chinese cohort."), https://gut.bmj.com/content/70/10/2012 (link to pdf); Karina Toledo, *Gastroesophageal Reflux May Increase Risk of Dying from COVID-19, Study Suggests*, Agência FAPESP (Oct. 28, 2020) ("Digestive disorders such as gastroesophageal reflux disease and Barrett's esophagus may be associated with a higher risk of death from COVID-19, according to a study supported by FAPESP and published on medRxiv, a preprint platform for new medical research that has not yet been peer-reviewed.") (hyperlinking to article www.medrxiv.org/content/10.1101/2020.09.10.20179135v1), https://agencia.fapesp.br/gastroesophageal-reflux-may-increase-risk-of-dying-from-covid-19-study-suggests/34468/. Regarding defendant's blood pressure, the court notes that he has not been diagnosed with hypertension. (Cf. Mem., Ex. B, DE # 115.) Even if he had, the CDC

5

identifies hypertension as a possible COVID-19 risk factor, in contrast to other heart conditions, such as heart failure and coronary artery disease, which definitively can increase the risk of severe illness from the virus. See CDC, People with Certain Medical Conditions.

Defendant is incarcerated at FCI Peterburg Medium. See BOP, Find an Inmate, https://www.bop.gov/inmateloc/ (search BOP Register Number 53296-056) (last visited Feb. 1, 2022). His cellmate works in the prison laundry and picks up and returns laundry to all living units, including those where inmates infected with COVID-19 are recovering. (Mot., Attach. 1, DE # 111-1, at 2-3.) Laundry workers, like defendant's cellmate, spread COVID-19, forcing the facility to go on lockdown. (Id. at 3.) For this reason, defendant is fearful of becoming infected with COVID-19. (Id.)

At FCI Petersburg Medium, 49 inmates and 12 staff are positive for COVID-19, BOP, COVID-19 Cases, https://www.bop.gov/coronavirus/ (last visited Feb. 1, 2022), representing a significant increase in the infection rate over the past three weeks, cf. United States v. Moore, Cr. No. ELH-18-431, 2022 WL 137865, at *11 (D. Md. Jan. 14, 2022) ("With respect to FCI Petersburg Medium, . . . as of January 10, 2022, out of a total of 1,505 inmates, one inmate and five staff have tested positive . . . ."). Most of the inmates at the entire Petersburg complex are fully inoculated. See BOP, COVID-19 Vaccine Implementation, https://www.bop.gov/coronavirus/ (last visited Feb. 1, 2022). Although defendant has been vaccinated, breakthrough infections of COVID-19 among fully vaccinated persons remain, particularly with the highly contagious Omicron variant, see CDC, Omicron Variant: What You Need to Know, https://www.cdc.gov/coronavirus/2019-ncov/variants/omicron-variant.html (last visited Feb. 1, 2022).

Considering defendant's age and health and the conditions at FCI Petersburg Medium, the court concludes defendant has failed to show that extraordinary and compelling reasons warrant a reduction in his sentence to time served (with or without serving his remaining custodial sentence on home confinement). Even assuming defendant had made such a showing, the court further concludes the § 3553(a) factors do not support reducing his sentence.

Prior to the instant offenses and when he was 18 years old, defendant was convicted in state court of two felony counts of breaking and/or entering a motor vehicle and two misdemeanors. Later, he was convicted of four additional misdemeanors, including two for driving while impaired. Around his 27th birthday, defendant committed the instant offenses. Defendant directed his courier to sell meth to a confidential informant on three occasions and defendant directly sold crack to the confidential informant once. (PSR, DE # 101, ¶ 8.) Thereafter, defendant agreed to pay an undercover officer $15,000 to kill his (defendant's) courier's girlfriend who he thought was an informant. (Id. ¶ 10.) After his arrest, defendant admitted his involvement in the offenses. (Id. ¶ 12.)

He has been incarcerated almost 12 years, or about 75% of his sentence with good time credit. (Resp., Ex.1, DE # 119-1.) Since his incarceration, defendant's minor daughter, who lives with a cousin, has experienced severe depression and attempted suicide; she is seeing a psychologist. (Mem., Ex. C, DE # 118-2, at 3.) Defendant's early release would enable him to support her emotionally and physically. (Id.) While incarcerated, defendant has maintained employment, receiving a letter of commendation for one position. (Mot., Attach. 1, DE # 111-1, at 1-2; id., Attach. 2, DE # 111-2, at 15.) He has taken programming and completed his GED and is paying towards the fine imposed, having satisfied his special assessment. (Mot., Attach.

7

2, DE # 11-2, at 3-14; Mem., Ex. D, DE # 118-3.)  He committed one prohibited act, and it occurred in 2017.  (Resp., Ex. 2, DE # 119-2.)

Upon release, defendant plans to live with his uncle and obtain employment in a restaurant.  (Mem., Ex. C, DE # 118-2, at 2.)  Defendant intends to make enough money from this employment to fully support himself.  (Id.)  He also has the support of his adult daughter.  (Id. at 3.)

Considering the applicable § 3553(a) factors, the court concludes reducing defendant's sentence to time served (with or without a period of home confinement) would not reflect the seriousness of the offenses, provide just punishment, or deter crime.  Defendant's motion for compassionate release is DENIED.

This 2 February 2022.

_____
W. Earl Britt
Senior U.S. District Judge